# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

W. ROBERT BAYNES, :
:
      Plaintiff, :
:
  v. : CIVIL ACTION NO.
: 1:07-CV-2805-JOF
GEORGE E. MASON FUNERAL :
HOME, INC., et al., :
:
      Defendants. :

## OPINION AND ORDER

This matter is before the court on Defendant's motion to dismiss [22] and motion to withdraw by Charles T. Huddleston as attorney [41].

**I.    Background**

    **A.    Procedural History**

Plaintiff, W. Robert Baynes, filed suit against Defendants, George E. Mason Funeral Home, Inc., David E. Lehman, Allegheny Heartland Casket Company, Inc., and Kimball Sweatt on November 14, 2007, alleging causes of action of fraud, conspiracy to commit fraud, intentional infliction of emotional distress, negligence, and breach of contract. Plaintiff alleges that he contracted with Mason Funeral Home for a bronze casket in which to bury his stepson, however, when the casket arrived in Georgia for burial, it was an

inferior steel casket. Mason Funeral Home has filed the instant motion to dismiss contending that this court cannot exercise personal jurisdiction over it.

**B.    Facts**

Plaintiff is a resident of the state of Georgia. *See* Amended Cmplt., ¶ 1. Defendants George E. Mason Funeral Home, Inc., David E. Lehman, Allegheny Heartland Casket Company, Inc., and Kimball Sweatt are Pennsylvania residents. *Id.*, ¶¶ 2-5.

On November 25, 2005, Plaintiff, along with other funeral services, contracted to purchase a solid bronze casket from Mason Funeral Home and David E. Lehman. *Id.*, ¶¶ 10-11. The casket was to contain the remains of George Brown Baynes and under the terms of the contract was to be shipped to Georgia for funeral services in Kennesaw. *Id.*, ¶ 12. Mason Funeral Home and Lehman obtained the casket from Allegheny Heartland Casket Company and Kimball Sweatt. *Id.*, ¶ 13. A plate with the statement "SOLID BRONZE" was affixed to the casket. *Id.*, ¶ 15. The remains in the casket were shipped to Georgia and stored until a permanent mausoleum was constructed. *Id.*, ¶ 16. The design of the mausoleum was based on the dimensions of the casket sent to Georgia. *Id.* When the casket was removed from storage, there were stains and a foul odor and fluid leaked from the casket. *Id.*, ¶ 17. An investigation determined that the casket was not solid bronze, but rather was steel. *Id.*, ¶ 18.

Defendants sent a replacement casket. *Id.*, ¶ 19. However, the casket was different in size from the original sent and the mausoleum had to be redesigned and rebuilt to accommodate the bronze casket. *Id.* Plaintiff alleges that the fraud and misrepresentation injured him in Georgia. *Id.*, ¶ 26.

In support of its motion to dismiss, Defendant Mason Funeral Home provided the affidavit of Joan Holsopple, its Treasurer. Ms. Holsopple testified that George E. Mason's principal place of business and only office is in Davidsville, Pennsylvania. *See* Holsopple Aff., ¶ 3. Mason Funeral Home has three full-time employees. *Id.*, ¶ 4. All of its employees, facilities, records, and property are located in Davidsville, Pennsylvania. *Id.* The majority of its customers are located in Pennsylvania. *Id.*, ¶ 5. Mason Funeral Home is not qualified or registered to do business in the state of Georgia and does not have a registered agent in Georgia. *Id.*, ¶ 6. It has no offices, employees, bank accounts or property in Georgia. *Id.*, ¶ 7. Mason Funeral Home does not advertise in Georgia, although its name appears in national funeral home directories. *Id.*, ¶ 8.

All aspects of the contract signed between Plaintiff and Mason Funeral Home were negotiated and executed in person at Mason Funeral Home's offices in Davidsville, Pennsylvania. *Id.*, ¶ 12. No employee of Mason Funeral Home traveled to or communicated with anyone in Georgia during the negotiations of the contract. *Id.*, ¶ 13. The services agreed to under the contract were performed in Davidsville, Pennsylvania. *Id.*, ¶ 14. "The

3

only portion of the contract that involved Georgia is that Mason Funeral Home contacted a funeral home in Kennesaw, Georgia and arranged to have the casket and remains transferred to that funeral home." *Id.*

On August 9, 2006, Mason Funeral Home learned that a steel casket had been sent rather than a bronze casket. *Id.*, ¶ 15. Mason Funeral Home immediately sent a bronze casket to Georgia at no charge. *Id.*, ¶ 16. No other communication took place between Mason Funeral Home and Georgia. *Id.*, ¶ 17.

**C. Contentions**

Defendant contends the court does not have personal jurisdiction over it because it does not solicit business in Georgia and the only Georgia connection in the case was Plaintiff asking that the casket be sent to Georgia after the embalming services took place. The contract for funeral services was negotiated and executed in Pennsylvania. Defendant avers that it is a small business of only three employees performing work only in Pennsylvania and it would be a hardship to defend the suit in Georgia. In the alternative, Defendant argues that the suit should be dismissed for improper venue or the court should transfer venue to the Western District of Pennsylvania. Plaintiff responds that Mason Funeral Home purposefully availed itself of the Georgia forum when it agreed to ship the casket to Georgia. Plaintiff further states that the emotional impact of the body being placed in a lesser casket than had been contracted for was felt in Georgia. Moreover, monetary

4

damages in the form of the mausoleum needing to be reconstructed also happened in Georgia.

## II.     Discussion

### A.     Personal Jurisdiction

The Georgia Long Arm statute permits a Georgia court to exercise personal jurisdiction over a nonresident if he "[t]ransacts any business within this state." *See* O.C.G.A. § 9-10-91(1). The statute also permits the exercise of jurisdiction if the nonresident "[c]ommits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act." *See id.*, § 9-10-91(2). The statute goes on to state the jurisdiction may also be had over a nonresident who "[c]ommits a tortious injury in this state caused by an act or omission outside this state, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." *Id.*, § 9-10-91(3).

Subsection (2) does not apply to the situation here because Plaintiff does not allege that Mason Funeral Home committed a tortious act within the state. Plaintiff does allege that the funeral home committed an act outside of Georgia that has caused tortious injury in Georgia, as described in subsection (3). The question then becomes whether Mason Funeral Home's relationship with Georgia qualifies as "the tortfeasor regularly does or solicits

5

AO 72A
(Rev.8/82)

business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." It is clear from Ms. Holsopple's unchallenged affidavit that Mason Funeral Home does not conduct any regular business in Georgia. Thus, the only provision of the Long Arm statute that could apply is subsection (1).

The Supreme Court of Georgia's most recent statement of the scope of its long-arm statute makes clear that under O.C.G.A. § 9-10-91(1), a court can exercise personal jurisdiction over a defendant who "transacts business" in the state of Georgia. *See Innovative Clinical & Consulting Services, LLC v. First National Bank of Ames*, 279 Ga. 672 (2005). The physical presence of the defendant in Georgia is not required. *Id.* Further, the court should not minimize the "intangible contacts" of the defendant with the forum state. *Id.* In *Innovative Clinical*, the Georgia Supreme Court remanded the case for the trial court to determine whether it had personal jurisdiction considering the postal and telephonic contacts between the defendant and the forum state. *Id.*

Since the Supreme Court's decision in *Innovative Clinical*, Georgia courts have explained:

> [j]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

6

*See Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518 (2006). This analysis mimics the minimum contacts and fairness analysis required under the Due Process Clause of the United States Constitution.

The court considers two factors when determining whether asserting personal jurisdiction over nonresident defendants would comport with due process. First, the court must decide whether the defendant has "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985). To satisfy minimum contacts for the purposes of specific jurisdiction, the contacts must (1) be related to plaintiff's cause of action; (2) involve some act of "purposeful availment" by the defendant of the privileges of the forum; and (3) be such that the defendant should reasonably anticipate being "haled into court there." *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994). If the court finds sufficient minimum contacts, it must then determine whether the exercise of personal jurisdiction would offend the "traditional conception of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

In determining the "fairness and reasonableness of a forum's exercise of jurisdiction, a court must consider, among other things, the burden on the defendant, the interests of the forum . . ., and the plaintiff's interest in obtaining relief." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1551 (11th Cir. 1993) (internal quotations and citations omitted). *See also McGow v. McCurry*, 412 F.3d 1207, 1216 (11th Cir. 2005) (under fair play analysis,

7

court considers burden on defendant, and interests of forum State, plaintiff, judicial system, and shared interest of the several States). Although there may be some burden in asking a defendant to litigate this case in a foreign state, the Eleventh Circuit has noted that "modern methods of transportation and communication" have greatly reduced such burdens. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 632 (11th Cir. 1996).

Because under these circumstances, the Georgia Long Arm Statute is coterminous with a Due Process analysis, the court begins there. In *Rudzewicz*, the Supreme Court noted that there was

> a continued division among lower courts respecting whether and to what extent a contract can constitute a "contact" for purposes of due process analysis. If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests or on "conceptualistic . . . theories of the place of contracting or performance." Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors – prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing – that must be evaluated in determining which the defendant purposefully established minimum contacts within the forum.

471 U.S. at 478-79.

The court applied this analysis in *Francosteel*. There, the plaintiff hired a Danish corporation to ship material to Georgia under bills of lading issued in France. On the way

8

to Georgia, the vessels sank and the cargo was lost. The plaintiff filed suit in Georgia, but the Court of Appeals affirmed the district court's dismissal for lack of personal jurisdiction finding that the contract for the bill of lading was negotiated and executed outside of Georgia. The only connection to Georgia was that the contract called for the delivery of the cargo in Georgia. 19 F.3d at 628. None of the parties in that case was a Georgia resident and none of the events giving rise to the cause of action took place in Georgia. *Id.*

Here, it is clear that there is no general jurisdiction over Defendant in Georgia. Specific jurisdiction could only be based on the single contract which required shipment of the casket and remains to Georgia. As described in *Rudzewicz*, the fact that the contract here is a single situation and not any part of a pattern of conducting business is telling. Further, it is clear that all of the contracted for services were completed in Pennsylvania, including the allegedly fraudulent switching of the caskets, with the only piece of the puzzle happening in Georgia the actual shipment of the casket. The court in *Francosteel* determined that mere shipment to a location was not sufficient. Further, the court finds it significant that it was Plaintiff who initiated the out of state portion of the transaction. Plaintiff came to Defendant's business in Pennsylvania requesting embalming services and asking that the remains be transported to Georgia for burial.

For the foregoing reasons, the court finds that Defendant does not have sufficient minimum contacts with Georgia such that it would have expected to be haled into court here.

9

Even if the mere sending of the casket to Georgia would be sufficient contacts, the court finds that it would offend traditional notions of fair play and substantial justice to pull Defendant to court here where there are only three employees in the company, the funeral home solicits no business outside of Pennsylvania, and Plaintiff initiated the contact for the funeral services contract and requested the shipment of the casket to Georgia. Thus, the court GRANTS Defendant's motion to dismiss [22].

Because the court determines that it cannot exercise personal jurisdiction over Defendant Mason Funeral Home, the court need not discuss Defendant's motion to dismiss for improper venue or motion to transfer venue.

Finally, the court GRANTS Charles T. Huddleston's motion to withdraw as counsel for Defendant David E. Lehman [41]. Defendant Lehman is DIRECTED to inform the court within thirty (30) days as to whether he will proceed *pro se* or if he has acquired new counsel.

### III. Conclusion

The court GRANTS Defendant's motion to dismiss [22] and GRANTS the motion to withdraw Charles T. Huddleston as attorney [41].

The Clerk of the Court is DIRECTED to DISMISS WITHOUT PREJUDICE Defendant Mason Funeral Home.

AO 72A
(Rev.8/82)

Defendant Lehman is DIRECTED to inform the court within thirty (30) days as to whether he will proceed *pro se* or if he has acquired new counsel.

**IT IS SO ORDERED** this 10th day of December 2008.

s/ J. Owen Forrester<br>
J. OWEN FORRESTER<br>
SENIOR UNITED STATES DISTRICT JUDGE

11